Judgment rendered August 9, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,241-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

WYNSTON V. SCOTT                            Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 355,412

Honorable John D. Mosely, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Paula C. Marx

WYNSTON V. SCOTT                        Pro Se

JAMES E. STEWART, SR.                   Counsel for Appellee
District Attorney

SAMUEL S. CRICHTON
MEKISHA SMITH CREAL
JOHN C. PHILLIPS
ALEX L. PORUBSKY
Assistant District Attorneys

* * * * *

Before PITMAN, STONE, and ELLENDER, JJ.

**ELLENDER, J.**

Wynston Scott appeals consecutive 13-year hard labor sentences following his convictions of two counts of aggravated criminal damage to property, La. R.S. 14:55. For the reasons expressed, we affirm.

**FACTS**

Wynston Scott and Lauren Haynes had a longstanding history of domestic incidents resulting from an eight-year on-and-off relationship. During the course of their time together, Haynes frequently reported Scott to police, each time complaining of abuse. As a result, Scott was arrested and charged on five separate occasions with domestic abuse battery. The couple was married four years of their eight-year relationship and have two children together, Amiyah and Ladarius.[1] When Haynes and Scott separated, a custody agreement for the children was never put into place; however, the kids resided primarily with Haynes.

On January 30, 2018, Haynes went to pick Amiyah up from school but was concerned when school officials informed her Scott had already done so. According to Haynes, she was not allowing Scott to see the children at the time, and Scott did not have permission to pick Amiyah up from school. Haynes unsuccessfully attempted to contact Scott multiple times, then called the Shreveport Police Department ("SPD") to ask them to perform a welfare check on Amiyah. Officers were dispatched, but they were unable to locate Amiyah or Scott.

Later that afternoon, Haynes was finally able to get Scott on the phone, which began several intense arguments between the couple. After

---

[1] Amiyah was four and Ladarius was one when the instant crimes occurred.

multiple heated phone calls and texts were exchanged, Scott agreed to meet up with Haynes and return Amiyah; however, Scott wanted Haynes to come to his father's house. Haynes refused because she wanted to meet somewhere in public as she did not feel safe going to Scott's father's house. Scott ultimately conceded and agreed to meet Haynes at Little Caesars Pizza.

Around 6:45 that evening, in her apartment in the Castlewood Complex in Shreveport, Haynes prepared with others for her meeting with Scott to retrieve Amiyah. Her then-boyfriend, Elijah Bridges, decided to join her along with his two friends, Anthony Wilson and Roy Jackson. As the group stepped out of the apartment, Haynes, who was holding her one-year-old son, Ladarius, spotted Scott and his cousin, Tradavion Hughes, in the parking lot of her building. Scott then shouted to the group, though there was some discrepancy about what he said. Haynes claims Scott demanded to know whose voice he had heard in the background of one of the earlier phone calls with Haynes. Wilson said Scott was demanding to know whose phone had been used to call him. Bridges claimed Scott asked the group "Which one of y'all want to fight?" Following whatever was shouted, Scott and Hughes both then immediately pulled out guns and began a massive shooting spree. During the barrage of significant gunfire, Bridges was struck five times and Wilson was grazed twice. Fortunately, their wounds were nonfatal.

In addition to Bridges's and Wilson's wounds, three bullet holes were discovered in Haynes's apartment and another 14 bullet holes were found in her car parked in the nearby parking lot. Haynes's neighbor, Waldo

2

Santiago, also had his apartment and car damaged during the shooting. Multiple bullets came through the walls of his apartment, splattering plaster on Santiago, who was inside during the shooting. Additionally, 12 bullet holes were discovered in Santiago's truck in the parking lot. During their subsequent investigation, SPD officers and detectives discovered multiple shell casings from both a .45-caliber and a 9 millimeter handgun. A warrant was obtained for Scott's arrest and he was taken into custody two days later.[2]

## PROCEDURAL HISTORY

Following his arrest, Scott was originally charged by bill of information with one count of attempted first degree murder of Anthony Wilson, La. R.S. 14:30 and 27, and two counts of aggravated criminal damage to property of Haynes's and Bridges's apartments, La. R.S. 14:55. The bill was amended twice, first to change the name of the victim in the attempted murder charge from Wilson to Elijah Bridges, as well as to reflect one of the apartments belonged to Santiago, not Bridges. The second amendment changed the charge of attempted first degree murder to attempted second degree murder, La. R.S. 14:30.1 and 27.

Jury trial commenced on May 25, 2022, resulting in Scott's conviction of both counts of aggravated criminal damage to property, but a mistrial was declared on the attempted second degree murder charge after the jury became hung.[3]

---

[2] The record does not reveal whether Scott's cousin Hughes, who also fired shots, was arrested or charged. Hughes was not made a codefendant in this case.

[3] While the record does not contain polling evidence of the jury's hung vote on the attempted murder charge, the assistant district attorney stated at sentencing it was his

3

Scott appeared for sentencing on June 16, 2022. The trial court first discussed the events on the night of the incident and expressed its concern that Scott used a firearm during the offense and put human life in danger both inside and outside of the apartments. The trial court referenced the multiple bullets which struck two people and the numerous bullet holes found in both apartments, one of which, the court noted, was occupied at the time of the shooting. Next, the trial court articulated its finding that a lesser sentence would deprecate the seriousness of Scott's crimes and there was an undue risk that during the period of any suspended sentence, Scott would commit another crime.[4] The trial court found Scott knowingly created a risk of death or great bodily harm to more than one person, and he was in need of correctional treatment. The trial court accepted Scott did express remorse for what he had done but, the court opined, it believed Scott had the intent to kill more than one person that night and this was a serious and dangerous matter. Lastly, the trial court stated Haynes may have instigated some of the situation, but neither she, nor any others present with her, used a firearm in this incident.

Scott was then given two separate 13-year hard labor sentences, to be served consecutively. After sentencing, Scott filed a motion to reconsider, which was subsequently denied with written reasons by the trial court on September 14, 2022. Six days later, on September 20, 2022, Scott's charge of attempted second degree murder was dismissed by the district attorney's office. Scott then filed this appeal on October 18, 2022.

understanding the vote was 11-1 to convict as charged, with the lone dissenting juror wanting to convict of attempted manslaughter.

[4] The transcript actually quotes the judge as saying "any other sentence."

4

**DISCUSSION**

In his sole assignment of error, Scott asserts his two, consecutive, 13-year hard labor sentences are unconstitutionally excessive. In support of this argument, Scott points out his conduct was based on the same act or transaction which constituted parts of a common scheme within a short period of time. Scott concedes both the apartment belonging to Haynes and the apartment belonging to Santiago were damaged in the gunfire; however, Scott contends these were not separate incidents as the damage to both occurred on the same day, in a very short period of time, all resulting from one single series of events. As such, Scott asserts there is a presumption in favor of concurrent sentences which applies to his case. In mitigation, Scott points to his young age of 24, being employed at the time of the offense, as well as his first-time felony offender status. He also maintains he is remorseful, loves his children, and had supported them until he was incarcerated.

In reviewing a sentence for excessiveness, an appellate court uses a two-step process. First, the record must reflect the trial court took the criteria set forth in La. C. Cr. P. art. 894.1. into account. The goal of La. C. Cr. P. art. 894.1 is to articulate an adequate factual basis for the sentence, not rigid or mechanical compliance with its provisions. *State v. Lanclos*, 419 So. 2d 475 (La. 1982). The trial court is not required to list every aggravating or mitigating circumstance, so long as it adequately considered them in particularizing the sentence to the defendant. *State v. Smith*, 433 So. 2d 688 (La. 1983). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health,

5

employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116.

The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Trotter*, *supra*. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *State v. Trotter*, *supra*; *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Trotter*, *supra*; *State v. Bell*, *supra.*

Scott was convicted of two counts of aggravated criminal damage to property which is defined, in pertinent part, as the intentional damaging of any structure, watercraft, or movable wherein it is foreseeable that human life might be endangered, La. R.S. 14:55A. Whoever commits the crime of aggravated criminal damage to property shall be imprisoned with or without hard labor for not less than one nor more than 15 years, La. R.S. 14:55B.

At sentencing, the trial court articulated the facts of the case and stated, "the only reason we're not talking about a murder charge is the fact that the victims were not hit in a place that would be fatal." The trial court noted the many bullets fired during this excessive shooting spree and how multiple human lives were put in danger. The trial court also stated a lesser sentence would not be sufficient in this case and Scott was at risk of

6

committing another crime during a period of any suspended sentence. Lastly, the trial court opined Scott was in need of correctional treatment based on his conduct during the offenses.

Although the trial court did not specifically reference Art. 894.1 while imposing Scott's sentences, the trial court still took its provisions into account. During sentencing, the trial court articulated the risk that Scott would commit another crime during a period of suspended sentence, Scott's need for correctional treatment, and its opinion a lesser sentence would deprecate the seriousness of Scott's crimes. These findings correlate to the guidelines found in sections A(1)-(3) of Art. 894.1. Additionally, the trial court made several references to Scott's conduct and how it created a great risk of death or great bodily harm to all of those present during the offense, as well as Scott's use of a firearm and discharge of it during the commission of the offenses. Each of these considerations derive from Art. 894.1B and are to be accorded weight by the trial court, as was the case here.

Based on these articulations by the trial court, coupled with our review of the sentencing transcript, we find the trial court adequately considered the provisions of Art. 894.1 while sentencing Scott. As stated in *State v. Smith*, *supra*, the trial court is only required to consider the Art. 894.1 factors, not list every aggravating or mitigating circumstance. Additionally, several of the factors articulated by the trial court were also set forth by the Louisiana Supreme Court in *State v. Jones, supra*, as important elements to be considered when reviewing a sentence for excessiveness. The trial court here properly and thoroughly took the criteria set forth in La. C. Cr. P. art. 894.1 into account while sentencing Scott.

We find it worth noting that although the trial court was not required to specifically reference Art. 894.1 or list any of its guidelines while sentencing Scott, this would be preferred practice. Providing clear references to Art. 894.1 during sentencing creates more uniformity in the sentencing process and provides a more thorough record for appellate review.

The second step in reviewing a sentence for excessiveness is a determination of whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the severity of the crime or nothing more than a purposelessness and needless infliction of pain and suffering. *State v. Trotter*, *supra*; *State v. Lobato*, 603 So. 2d 739 (La. 1992). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166. As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Cozzetto*, 07-2031 (La. 2/15/08), 974 So. 2d 665; *State v. Gibson*, 54,400 (La. App. 2 Cir. 5/25/22), 338 So. 3d 1260, *writ denied*, 22-00978 (La. 3/7/23), 356 So. 3d 1053.

Scott was sentenced to consecutive 13-year hard labor sentences after being convicted of two counts of aggravated criminal damage to property. When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. However, concurrent

sentences arising out of a single course of conduct are not mandatory, and consecutive sentences are not necessarily excessive. *State v. Green*, 54,955 (La. App. 2 Cir. 4/5/23), __ So. 3d __; *State v. Dale*, 53,736 (La. App. 2 Cir. 1/13/21), 309 So. 3d 1031. It is within the trial court's discretion to make sentences consecutive rather than concurrent. *State v. Green*, *supra*; *State v. Dale*, *supra*. The trial court's failure to articulate specific reasons for consecutive sentences will not require a remand if the record provides an adequate basis to support separate sentences. *State v. Green*, *supra*; *State v. Williams*, 52,052 (La. App. 2 Cir. 6/27/18), 250 So. 3d 1200.

Here, Scott checked his daughter out of school without Haynes's knowledge or permission, which led to a series of heated arguments. After agreeing to meet Haynes in a public location at Little Caesar's Pizza to exchange the child, Scott instead essentially ambushed Haynes by lying in wait outside her apartment. Scott and his cousin armed themselves with handguns and confronted Haynes, her one-year-old son, and her friends as they stepped out of Haynes's apartment. After a brief verbal exchange, Scott and his accomplice fired numerous gunshots toward Haynes and her group. Seven of the gunshots struck two of the men who were accompanying Haynes, while multiple bullet holes were found in Haynes's and Santiago's apartments and cars. Notably, Santiago was inside his apartment as these gunshots ripped through his walls. Fortunately, there was no loss of life from this senseless shooting spree.

Although Scott stood trial on charges of attempted second degree murder and two counts of aggravated criminal damage to property, Scott was convicted of only the aggravated criminal damage to property charges

due to the hung jury. Had Scott been convicted of attempted murder, which this record contains sufficient evidence to support, he would have faced an additional 50 years without benefits, La. R.S. 14:30.1 and 27. At the very least, there is sufficient evidence in this record to support the commission of attempted manslaughter, which would have exposed Scott to an additional 20 years at hard labor, La. R.S. 14:31 and 27. For each conviction of aggravated criminal damage to property, Scott was sentenced to only 13 years at hard labor, when he could have received 15 years. Scott received a tremendous benefit in his sentencing exposure from having a hung jury on his attempted murder charge, and then from the district attorney ultimately dismissing the charge, in spite of Bridges being shot five times. As stated by this court in *State v. Hampton*, 50,561 (La. App. 2 Cir. 5/18/16), 195 So. 3d 548, *writ denied*, 16-1181 (La. 5/26/17), 221 So. 3d 854, "a trial judge may properly consider evidence of other offenses in determination of sentence where there is a showing that the defendant did in fact perpetrate the other offense." The trial court was permitted during sentencing to consider Scott's other charged offense of attempted second degree murder and the undisputed facts which led to this charge, namely the shooting of Bridges five times, not to mention Wilson being shot as well.

Based on these findings, it is evident the record provides an adequate basis to support consecutive sentences in spite of the trial court's failure to specifically articulate why it was imposing consecutive sentences. This is the very type of case where consecutive sentences should be imposed due to the egregious nature of Scott's conduct. Scott showed a severe disregard for the value of human life when he and his cousin fired a significant number of

10

bullets toward a group of people, including his own one-year-old child, in an occupied apartment complex with the apparent intent to cause death or serious bodily injury. As such, we find the two, consecutive, 13-year hard labor sentences are not unconstitutionally excessive, do not shock the sense of justice, and are not a needless infliction of pain and suffering.

Scott's assignment of error lacks merit.

## CONCLUSION

For the reasons expressed, we affirm the convictions and sentences.

**AFFIRMED.**